UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | CASE NO. 21-035 (RC) |
| MASON JOEL COURSON, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' NOTICE OF INFORMATION IN PREPARATION FOR NOVEMBER 30, 2022 CHANGE OF PLEA HEARING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully provides the following information to the Court in preparation for defendant Mason Joel Courson's change of plea hearing on November 30, 2022.

**I.     BACKGROUND**

   **A.  The Indictment**

On November 17, 2021, a grand jury in this district returned a twenty-four count superseding indictment in the above-captioned case (the "Superseding Indictment"). ECF No. 145. The Superseding Indictment charged the defendant with:

- Count Seven: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Count Ten: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and (b), and 2;

- Count Eleven: Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1);

- Count Fourteen: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Count Eighteen: Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and

1

(b)(1)(A);

- Count Nineteen: Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A);

- Count Twenty: Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A);

- Count Twenty-Four: Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

The defendant has indicated that he plans to plead guilty, without the benefit of a plea agreement, to Count Ten of the Superseding Indictment.

**B. The Statutory Maximum Sentence**

If found guilty of a violation of 18 U.S.C. § 111(a)(1) and (b), the defendant faces a maximum term of imprisonment of 20 years, up to a $250,000.00 fine, up to three years of supervised release, a $100 special penalty assessment, and restitution as may be ordered by the Court.

**C. The Elements of the Offense**

1. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or employee of the United States, or any person assisting such an officer or employee in the performance of the officer's or the employee's official duties;

2. The defendant did so forcibly;

3. The defendant did so while the officer or person assisting the officer was engaged in or on account of official duties;

4. The defendant acted intentionally; and

5. The defendant used a deadly or dangerous weapon.

**D. The Government's Preliminary Guidelines Calculation on Count Ten**

Should the defendant plead guilty to a violation of 18 U.S.C. §§ 111(a)(1) and (b) and 2, Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Aiding and Abetting, based on the facts and circumstances of the offense, his estimated sentencing guidelines analysis is as follows:

| | |
|---|---|
| **Base offense level: § 2A2.4(a):** | **10** |
| **Cross Reference Applies: § 2A2.4(c)** | **apply § 2A2.2**[1] |
| **Base offense level: § 2A2.2(a)** | **14** |
| **Specific offense characteristics:** | |
| (1) The offense involved use of a dangerous weapon, § 2A2.2(b)(2)(B) | +4 |
| (2) The victim (Officer B.M.) sustained bodily injury, § 2A2.2(b)(3) | +3 |
| (3) The defendant was convicted under 18 U.S.C. § 111(b), § 2A2.2(b)(7) | +2 |
| **Chapter 3 Adjustments:**[2] | |
| (1) Official victim, § 3A1.2(b) | +6 |
| (2) Acceptance of Responsibility (-3), § 3E1.1 | <u>-3</u> |
| **Final offense level:** | **26** |

---

[1] Section 2A2.4(c) is a cross-reference to §2A2.2, which applies "[i]f the conduct constituted aggravated assault." "Aggravated assault" includes felonious assaults that involved "a dangerous weapon with intent to cause bodily injury" and/or "an intent to commit another felony." U.S.S.G. § 2A2.2 comment (n. 1).

[2] The Government reserves the right to request an upward departure pursuant to U.S.S.G. § 3A1.4, n. 4.

3

**Criminal history category: (Chapter 4, Part A):**                                        I or II[3]

**Sentencing Guidelines range from sentencing table:**   63 to 78 months (if CHC I)
                                                                                                 70 to 87 months (if CHC II)

## II.    FACTUAL BASIS SUPPORTING COUNT TEN

The following statement of facts does not purport to include all of the defendant's illegal conduct.  It is intended to represent sufficient information for the Court for in a factual basis for accepting the defendant's guilty plea to Count Ten of the Superseding Indictment.

Had the defendant proceeded to trial on Count Ten of the Superseding Indictment, the Government's evidence would have established beyond a reasonable doubt that:

*The Attack at the U.S. Capitol on January 6, 2021*

1.    The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only

---

[3] The defendant has at least four criminal convictions:

(1) a March 4, 2016 conviction, in Palm Beach County (Florida) State Court, for Battery, a felony, in violation of Florida Code § 784.07(2)(b), for which a sentence of 12 months' probation was imposed;
(2) a December 1, 2017 conviction, in the Broward County (Florida) State Court, for Grand Theft in the Third Degree, a felony, in violation of Florida Code § 812.014(2), for which a sentence of 12 months' probation was imposed;
(3) a June 29, 2017 conviction, in the Lee County (Florida) State Court, for Loitering, a misdemeanor, in violation of Florida Code § 856.021, for which a sentence of a $225 fine was imposed;
(4) a November 6, 2018 conviction in Franklin Park (Pennsylvania) Municipal Court, for Driving Under the Influence, in violation of Pennsylvania Code § 3802 for a sentence of four days was imposed.

In connection with at least the Grand Theft offense, adjudication was "withheld" pursuant to Fla. Stat. § 948.01(2).  The Government defers to the Probation Office regarding how to factor this offense into the defendant's criminal history category.

authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowdencouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States Houseof Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Mason Courson's Assault of Metropolitan Police Officer B.M. with a Baton*

8. On January 6, 2021, the U.S. Capitol Police ("USCP") requested assistance from the Metropolitan Police Department ("MPD") and other law enforcement agencies in the area to protect the U.S. Capitol. Multiple MPD officers and other law enforcement officers came to assist. At various times, these officers assumed posts at an archway (the "Archway") that

provided access to the interior U.S. Capitol building from the lower west terrace via a passageway (the "Tunnel").

9. By approximately 4:20 p.m., hundreds of rioters had gathered on the lower west terrace, some of whom were throwing and/or swinging various objects at the group of law enforcement officers positioned at the Archway, including MPD Officers A.W., B.M., and C.M. These officers were wearing full MPD-issued uniforms, including marked helmets, police badges, and duty belts. Starting at approximately 4:27 p.m., Officer A.W. was positioned towards the opening of the Archway when co-defendant Justin Jersey charged at Officer A.W., grabbing his face, and knocking Officer A.W. to the ground. While Officer A.W. was lying on the ground of the Archway, co-defendant Jack Wade Whitton climbed over a railing and began striking Officer B.M. with a crutch and then kicked Officer A.W., who was still lying on the ground.

10. Whitton then grabbed Officer B.M., first by his baton, then by the helmet and the neck of his ballistic vest, pulled him down, over Officer A.W., and started dragging Officer B.M. down the steps in a prone position. Whitton and co-defendants Jeffrey Sabol and Logan Barnhart dragged Officer B.M. fully into the crowd.

11. As Officer B.M. was dragged down the steps into the crowd, Courson was positioned at the bottom of the steps and was wielding a baton. Once Officer B.M. was partway down the steps, co-defendant Peter Stager beat Officer B.M. with a flagpole and Courson beat Officer B.M. with a police baton. As a result of the attack, Officer B.M. sustained physical injuries including bruising and abrasions.

12. After assaulting Officer B.M. with the baton, Courson ascended the steps to the Archway. Courson then attempted to grab Officer A.W., who was still on the ground fending

off the attacks.

13. The events described in paragraphs 9-12 are depicted in Exhibit 1, which is a portion of a video posted to You Tube at youtube.com/watch?v=aEGthdTzedk; in Exhibit 1A, which is a still image from Exhibit 1; in Exhibit 2, which consists of footage from Officer C.M.'s body-worn camera from approximately 4:26 p.m. through approximately 4:28 p.m. on January 6, 2021; and in Exhibits 2A and 2B, which are still images from Exhibit 2. Courson is circled in red in Government Exhibits 1A, 2A and 2B. Officer B.M. is circled in green in Government Exhibits 2A and 2B.

14.     When Courson engaged in the conduct against Officer B.M., he knew that the officer was engaged in the performance of official duties as an officer from the MPD who was assisting the USCP.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Colleen D. Kukowski

Colleen D. Kukowksi
DC Bar No. 1012458
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Colleen.Kukowski@usdoj.gov
(202) 252 2646

/s/ Benet J. Kearney

Benet J. Kearney
New York Bar No. 4774048
Assistant United States Attorney
1 Saint Andrew's Plaza
New York, New York 10007
Benet.Kearney@usdoj.gov
(212) 637 2260

/s/ Matthew Moeder

Matthew Moeder
Missouri Bar No. 64036
Assistant United States Attorney
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Matthew.Moeder@usdoj.gov
(816) 426-4103