**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-035 (RC)** |
| **MASON JOEL COURSON,** | |
| **Defendant.** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
FOR A REDUCTION IN SENTENCE OR FOR COMPASSIONATE RELEASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Mason Joel Courson's motion for (1) a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2) and/or (2) compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 384, the "Motion" or "Mot."). The defendant has failed to meet the criteria for either request. The Court should deny the Motion.

**BACKGROUND**

A. **The Instant Offense**

The facts of this case are described in detail in the Notice of Information in Preparation for November 30, 2022 Change of Plea Hearing (ECF 253), the PSR (ECF 292), and the government's memorandum in aid of sentencing (ECF 383). In brief, the defendant was a violent participant in the attack on the U.S. Capitol on January 6, 2021. The defendant joined the mob attempting to forcibly breach the U.S. Capitol building at an arched entrance (the "Archway") on the Lower West Terrace ("LWT") to a passageway (the "Tunnel") leading to the interior of the building, which police officers defended for more than two hours that day. The defendant initially entered the Tunnel at approximately 3:15 p.m., and over the course of several minutes forcefully pushed and shoved along with other rioters in an effort to break the police line and gain entrance to the

1

Capitol building.   As officers pushed the defendant out of the Tunnel, he grabbed at their

equipment and later armed himself with a police baton that an officer likely lost during the melee.

Then, starting at approximately 4:26 p.m., the defendant took part in a brutal assault of several

police officers in the area around the Archway.  Other rioters pulled two police officers off of the

police line in the Tunnel and into the mob.  The defendant beat one of the officers with the baton,

then, as that officer attempted to re-join the police line in the Archway, pushed his head, causing

him to stumble back into the crowd.  The defendant then attempted to grab the other officer, who

was lying on his back fending off attacks by other rioters.

B. **Procedural History**

On November 17, 2021, a federal grand jury returned a superseding indictment, charging

twenty-four counts against nine defendants. The indictment charged the defendant in eight of the

counts:

- Count Seven: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Count Ten: violation of 18 U.S.C. § 111(a)(1) and (b) and § 2 (Assaulting, Resisting, or Impeding Certain Officers or Employees and Inflicting Bodily Injury or Using a Deadly or Dangerous Weapon, and Aiding and Abetting);

- Count Eleven: violation of 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers);

- Count Fourteen: violation of 18 U.S.C. § 231(a)(3) (Obstruction of Law Enforcement During Civil Disorder);

- Count Nineteen: Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A);

- Count Twenty: Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A);

- Count Twenty-Four: Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

The defendant was arrested on December 14, 2021 and detained pending trial. On November 30, 2022, the defendant pleaded guilty without a plea agreement to Count Ten, the assault with the baton. ECF Minute Entry November 20, 2022.

On June 16, 2023, after submissions and argument by both parties, this Court sentenced the defendant to 57 months of incarceration, followed by 3 years of supervised release. On June 27, 2023, the government moved to dismiss the pending charges against the defendant, which the Court granted on July 17, 2023.

On November 29, 2023, the defendant's Motion was docketed.[1] The defendant seeks a reduction of his term of 57 months' imprisonment to a period of home confinement. The defendant has been incarcerated for approximately 24 months, with a projected release date of December 31, 2025.

**ARGUMENT**

The Motion seeks relief of two grounds. First, the defendant seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that the revisions to the United States Sentencing Guidelines by Amendment 821 would result in a lower sentencing range, had the revised Guidelines been applied. Mot. at 5-6. Second, the defendant requests compassionate

---

[1] It appears that the Motion was received by the Clerk of Court on November 20, 2023, but was officially docketed on November 29, 2023.

release under 18 U.S.C. § 3582(c)(1), arguing that extraordinary and compelling circumstances warrant his release pursuant to U.S.S.G. § 1B1.13.  Mot. at 7-9.  Neither argument has merit.  The defendant does not satisfy either statute; nor do the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of any reduction in sentence or release.

### A.  Amendment 821 Does Not Apply to the Defendant.

#### 1.  Applicable Law

Section 3582(c)(2) provides that, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Amendment 821 alters the United States Sentencing Guidelines in two ways relevant to the defendant's motion for a reduction in sentence:

First, it removes former Section 4A1.1(d), which applied two criminal history points to any defendant who "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," often referred to as "status points."  U.S.S.G. § 4A1.1(d) (November 2021).  Instead, it applies a single criminal history point to any defendant with such a status who *also* receives seven or more criminal history points under the other provisions of Section 4A1.1.  U.S.S.G. § 4A1.1(e) (November 2023).

Second, Amendment 821 provides for a 2-level reduction in offense level for defendants with no criminal history points, who also meet certain other criteria, including that they "did not use violence or credible threats of violence in connection with the offense" and "did not possess

. . . a firearm or other dangerous weapon in connection with the offense." U.S.S.G. § 4C1.1(a)(1), (2), (7) (November 2023).

Although these revisions went into effect on November 1, 2023, both are grounds for a reduction in sentence under 18 U.S.C. § 3582(c)(2).  U.S.S.G. § 1B1.10(a)(1), (d) (November 2023).  However, neither is grounds for reduction if the amendment itself is inapplicable or would not lower the defendant's guideline range.  U.S.S.G. § 1B1.10(a)(2).  (And, in any event, no reduced term of imprisonment based on the retroactive application of Amendment 821 can be ordered prior to February 1, 2024.  U.S.S.G. § 1B1.10(e)(2).)

### 2. Relevant Facts

At sentencing, the Court calculated the defendant's guidelines range as follows:

Offense Level

| U.S.S.G. § 2A2.2(a) | Base Offense Level | **14** |
|---|---|---|
| U.S.S.G. § 2A2.2(b)(2)(B) | Dangerous Weapon | **+4** |
| U.S.S.G. § 2A2.2(b)(3)(A) | Bodily Injury | **+3** |
| U.S.S.G. § 2A2.2(b)(7) | Conviction under 18 U.S.C. § 111(b) | **+2** |
| U.S.S.G. § 3A1.2(a)-(b) | Government Official Victim; Application of Chapter 2, Part A of U.S.S.G. | **+6** |
| | **Adjusted Offense Level:** | **29** |
| U.S.S.G. § 3E1.1(a)-(b) | Acceptance of Responsibility | **-3** |
| | **Total Offense Level:** | **26** |

Criminal History Category

The defendant had four convictions, resulting in three criminal history points, putting him in criminal history category II.  The defendant did not receive any criminal history points pursuant to Section 4A1.1(d) (November 2021).

Guidelines Range

An offense level of 26 and a criminal history category of II resulted in a guidelines range
of 70-87 months' imprisonment.  The Court varied downwards, imposing a sentence of 57 months.

### 3.  Discussion

Neither of the provisions of Amendment 821 that the defendant cites are applicable to the
defendant or would have altered his calculated guidelines range in any way.  As noted above, the
defendant did not receive any "status points;" his criminal history category was calculated based
solely on convictions.  Thus, he is not affected by the revisions to Section 4A1.1.

Similarly, the new Section 4C1.1 does not apply to the defendant either.  First, he received
three criminal history points. U.S.S.G. § 4C1.1(a)(1).  Second, the defendant was convicted of
assaulting a police officer by striking him with a baton.  He both "use[d] violence" in connection
with the offense and "possess[ed] . . .a dangerous weapon" in connection with this offense.
U.S.S.G. § 4C1.1(a)(3), (7).  The Court should deny the motion for a reduction in sentence under
18 U.S.C. § 3582(c)(2).

### B.  The Court Should Not Grant the Defendant Compassionate Release.

### 1.  Applicable Law

Before the enactment of the First Step Act in 2018, only the Bureau of Prisons could seek
compassionate release for a defendant. *See United States v. Long*, 997 F.3d 342, 348 (D.C. Cir.
2021). With the passage of the First Step Act, however, defendants now may file for compassionate
release on their own behalf. *See id.* As amended by the First Step Act, § 3582(c)(1)(A) now states
in relevant part as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons,
>     or upon motion of the defendant after the defendant has fully
>     exhausted all administrative rights to appeal a failure of the
>     Bureau of Prisons to bring a motion on the defendant's behalf

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)     extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

As the movant, the defendant bears the burden to establish that early release is warranted. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). To do so, the defendant must show (a) that he has exhausted his right to appeal the BOP's failure to seek compassionate release on his behalf or that 30 days have lapsed since he sought a reduction in sentence from the warden of his BOP facility; (b) the existence of extraordinary and compelling circumstances sufficient to warrant his early release; and (c) that weighing the applicable § 3553(a) factors counsel in favor of early release.

In *Long*, the D.C. Circuit held that the policy statement set forth at U.S.S.G. § 1B1.13 "is not applicable to compassionate release motions filed by defendants." 997 F.3d at 347. The Court of Appeals later held, however, that although Section 1B1.13 is not binding in connection with motions filed by defendants, courts may consider it as "persuasive authority." *United States v. Jenkins*, 50 F.4th 1185, 1195 (D.C. Cir. 2022).

That section sets out several categories of circumstances that are "extraordinary and compelling," including serious medical conditions, U.S.S.G. § 1B1.13(b)(1)-(2), family circumstances arising from the incapacitation of the defendant's child's caregiver, spouse, or

parent, or another similarly-situated individual, where the defendant could be the only available caregiver, *id.* § 1B1.13(b)(3), and the defendant's having sustained sexual or physical abuse while in custody, *id.* § 1B1.13(b)(4).  The section also provides that circumstances of similar gravity as those enumerated may be extraordinary and compelling.  *Id.* at § 1B1.13(b)(4).

### 2.  The Defendant Has Not Exhausted His Administrative Remedies

As noted above, 18 U.S.C. § 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed unless it does so "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 § 3582(c)(1)(A).  Thus, a "court may consider a defendant's [compassionate-release] motion only after the defendant has" exhausted those remedies. *United States v. Morales*, No. 06-CR-248-4 (JDB), 2021 WL 4622461, at *2 (D.D.C. Oct. 7, 2021).   The purpose of the rule is for the BOP, in the first instance, to evaluate the evidence and arguments of the defendant.  *See United States v. Jenkins*, 2020 WL 1872568 at *1 (D.Neb. Apr. 14, 2020) (Court should not consider motion "based on evidence or arguments that weren't presented to the Bureau of Prisons first").   The exhaustion requirement is a mandatory claim-processing rule that is not subject to equitable exceptions and must be applied when the government invokes it. *See Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1848 (2019); *Eberhart v. United States*, 546 U.S. 12, 16 (2005).

Here, defendant claims to have filed a request to the Warden at FCI Coleman on November 1, 2023.  Mot at 3.  No such request was docketed with the Motion.  On December 29, 2023, BOP

informed the government that it did not have any request for a reduction in sentence from the defendant in its system.

As noted above, the exhaustion requirement is a mandatory claims processing rule that must be applied when the government invokes it. Defendant's motion fails because he has not shown that he exhausted all of potential administrative remedies as required before filing it.

### 3. The Defendant Has Not Shown Extraordinary and Compelling Reasons Warranting Compassionate Release.

The defendant claims that the following circumstances are "extraordinary and compelling" such that they warrant his release: (1) He is a non-violent offender. Mot. at 6. (2) He lacks significant criminal history. *Id.* (3) He received a lengthy sentence. *Id.* at 9. None of these assertions are true. First, the defendant is undoubtedly a violent offender. He assaulted a police officer during a violent riot by striking him with a metal baton and was convicted of violating 18 U.S.C. § 111(a)(1) and (b). Second, the defendant's criminal history is troubling, particularly when considered in conjunction with the instant offense. As discussed above, he has at least four prior adult convictions, which resulted in three criminal history points. PSR ¶¶ 61-64. One of those convictions involved aggressively resisting arrest by shoving, pushing, punching, and kicking police officers. *Id.* ¶ 61. Third, while the defendant's sentence is not insignificant, it is not "unusually long" such that compassionate release would be warranted under U.S.S.G. § 1B1.13(b)(6) (nor has he served at least 10 years of that sentence). Nor is it out of line with sentences imposed on other January 6 defendants convicted of assaulting police officers. *See, e.g.*, *United States v. Webster*, 21 Cr. 208 (APM) (120 months (post-trial conviction)); *United States v. Khater*, 21 Cr. 222 (TFH) (80 months); *United States v. Ponder*, 21 Cr. 259 (TSC) (63 months); *United States v. Head*, 21 Cr. 291 (ABJ) (90 months); *United States v. Young*, 21 Cr. 291 (ABJ) (86 months); *United States v. Palmer*, 21 Cr. 328 (TSC) (63 months).

But even assuming that the defendant's claims were accurate, none, even when considered together, rises to the level of circumstances that would warrant his release. When Congress enacted the 1984 Sentencing Reform Act, which included the original compassionate release statute, the term 'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Webster's Third New International Dictionary: Unabridged* 807 (1971)). Indeed, "[c]utting short a duly authorized prison sentence is, in the statute's own words, an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling.'" *United States*, v. *Shabazz*., No. 17-cr-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021). Here, the circumstances the defendant cites, if true, would apply to broad swaths of the federal prison population and so are not "extraordinary."[2]

## C.  The 18 U.S.C. § 3553(a) Factors Weigh Against Release.

Under both 18 U.S.C. § 3582(c)(1)(A) and 18 U.S.C. § 3582(c)(2), the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) in its analysis. *See* 18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(2) (the Court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable"). Those factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant,"

---

[2] Statutory structure confirms this conclusion. The compassionate-release statute must be interpreted in the context of the broader federal sentencing scheme. *See Abramski v. United States*, 573 U.S. 169, 179 (2014) ("[W]e must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'"). A "general rule of finality" applies to a final criminal judgment, which "may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010). In general, "compassionate release" means immediate release for compassion-related reasons based on extreme life circumstances, particularly medical circumstances. *See, e.g.*, *Black's Law Dictionary* (11th ed. 2019) (definition of "medical parole," "[a]lso termed compassionate release," under entry for "parole") ("The release of a terminally ill prisoner to a hospital, hospice, or other healthcare facility."). And that is the role compassionate release has long played within the federal system.

and also the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner."

Even where a defendant has established an extraordinary and compelling reason for release, the Court may reduce his sentence only if the balance of the § 3553(a) factors favor release. *See United States v. Edwards*, No. 03-234 (JDP), 2020 WL 5518322 at *4 (D.D.C. September 12, 2020) ("[E]ven if Mr. Edwards *had* presented "extraordinary and compelling reasons" for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release." (emphasis in original)); *see also United States v. Holroyd*, 464 F. Supp. 3d 14, 19 (D.D.C. 2020) (TNM) ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release."); *United States v. Sears*, 19-cr-21, 2020 WL 3250717 at *2 (D.D.C. June 16, 2020) (denying compassionate release to inmate with diabetes, hypertension and asthma who had established extraordinary and compelling reasons because "this Court does not, and cannot, find that a reduction in [Defendant]'s term of imprisonment is consistent with the § 3553(a) factors at this time").

The Court assessed the 18 U.S.C. § 3553(a) factors prior to and at the defendant's sentencing approximately six months ago and concluded that a 57-month sentence was sufficient, but not greater than necessary, citing in part the violent nature of the defendant's conduct, his use of a weapon against a police officer, and the danger posed to the community by individuals who are willing to attack law enforcement officers.  All of the factors the defendant now cites – his

business ownership, his education, his young son and other familial relationships – were all known

to and considered by the Court at the time of sentencing. *Compare* Mot. at 10-11 *with* Defendant's

Sentencing Memorandum, ECF No. 317, at 2, 7-9. There is no new detail or argument to be found.

*See United State v. Merisse*, 06-cr-42 (JDB), 2023 WL 6847034, at \*7 (D.D.C. Oct. 17, 2023) (the

defendant "has not identified any relevant factual or legal change that would allow the Court to

reconsider [disparities between his sentence and those of his co-defendants]. As the Sixth Circuit

has explained, 'identifying "extraordinary and compelling reasons" is a task that focuses on post-

sentencing ... developments.'" (quoting *Hunter*, 12 F.4th at 569)).

Further, the defendant's Motion indicates that he has not fully reckoned with the

seriousness of his criminal conduct, for which the defendant seems to disclaim responsibility. *See*

Mot. at 2 ("several people were injured and Mr. Courson was charged with a federal crime"); *id.*

("Mr. Courson never intended . . . [to] commit a crime."); *id.* at 6 (the defendant "is a non-violent

offender"). While the defendant claims to have made efforts towards rehabilitation, his own

description of his conduct undermines that assertion. Further, since the defendant's sentencing, a

new fundraising campaign has been established on his behalf,[3] apparently administered by his

mother. *See* https://www.givesendgo.com/helpmason (last accessed Dec. 29, 2023). That website

describes the defendant's incarceration as follows: "[H]is constitutional rights all [have been] taken

away because of his views and beliefs in standing for freedom and democracy." It makes no

---

[3] The two fundraising campaigns in effect at the time of his sentencing -- https://www.givesendgo.com/helpsavemason and https://www.givesendgo.com/masonjc -- have since been unpublished.

mention of his violent beating of a police officer and instead casts his conviction as a result of a legitimate political protest.

The § 3553(a) factors do not favor release and so the Court should not grant the defendant's Motion.

## **CONCLUSION**

For the reasons above, and based on the entire record, defendant has not met his burden to show that he is entitled to a sentence reduction. Accordingly, the Court should summarily deny defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Benet J. Kearney*_____
BENET J. KEARNEY
Assistant United States Attorney
N.Y. Bar No. 4774048
26 Federal Plaza
New York, New York 10278
Benet.Kearney@usdoj.gov
(212) 637 2260

13

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Opposition to Defendant's Motion for a Reduction in Sentence or for Compassionate Release was served on all counsel of record via the Court's electronic filing service and on Mason Joel Courson via certified mail.


                               */s/ Benet J. Kearney*

                               BENET J. KEARNEY

                               Assistant United States Attorney


Date:  December 29, 2023